All arguments not to exceed 15 minutes preside, Mr. James Sterling Lawrence for the appellate. Good morning. May it please the court, I'm attorney James Sterling Lawrence and I represent Mr. Jarrhod Williams, the petitioner appellant. First, I'd like to give a small amount of factual background about the case. Mr. Williams had cousins of him that were gunned down and he took action in revenge. He confessed to it. The gun was found. Under the circumstances, unless the statement were held to be involuntary, he was certain to be convicted. The circuit court judge ruled that he believed the officers and therefore that ruling was not really subject to being overturned. There were a couple of extenuating circumstances that the prosecutor in Wayne County could legitimately consider and did consider. Number one, the wishes of the family of the deceased and number two, the fact that it was in response to another killing. As a result of that, they offered the defendant 12 to 30 years plus two years for the felony firearm and the defendant took it. For some reason, that is not clear. It's not in the record. He was not immediately sentenced or sentenced within a short period of time. Six months later, he comes in with attorney Barnett, Marvin Barnett, and Mr. Barnett has him withdraw the plea. Six months after that, when the case is going to trial, Mr. Barnett makes some statements that we find to be extremely disturbing. In the beginning of the district court's opinion, they say that this is a case about choices, hindsight, and regret as if attorney Barnett had no influence on the defendant's actions in court. The state certainly did regret admitting Mr. Marvin Barnett as an attorney. They've disbarred him for his drug use and bizarre behavior. What I regret is that there has been so far no remedy for people that Mr. Barnett damaged in his representation. Of course, there's only one of them that I'm representing. Mr. Barnett comes into court after he has the defendant withdraw the plea and says, Look, 10 to 12 years, that's not enough for two lives. I'm fighting for everybody here, including the family. And I submit to the court that that was a conflict of interest. The duty of the attorney is to represent the defendant's interests, not the interests of the family of the victims. The prosecutor certainly could have taken that position, that 12 years isn't enough. They didn't. The defense lawyer, Mr. Barnett, went on to say that I don't believe in negotiating with the prosecutor's office. Was he appointed or retained? Not that it makes a difference. Actually, I'm not certain. Okay, so . . . Mr. Lawrence, let's assume that we disagree with the government's position in this case about whether an evidentiary hearing was available under 2254E2. We agree with you that the district judge could have had a hearing. In this case, as you know, what the district judge found is that the theory that you have is so thoroughly refuted by the record that an evidentiary hearing wouldn't have made a difference, and so, therefore, exercises discretion not to have the hearing. Do you agree that, at least that you may disagree with the conclusion, but the analysis is correct? The district judge does have the discretion to refuse to hold a hearing that he otherwise could have if the claims are refuted by the record. And I agree . . . Am I right so far? . . . in principle, but I disagree with applying it to this case. That I understand. So when we then get to the exercise of that discretion, essentially the claim here is it's just simply implausible that Barnett or anybody else actually told him the things that you are imputing from the silly things Barnett said in open court, because your guy filed motions and never even alluded to this. So what's your response to that? Okay. Well, my response is, first of all, every single thing said by Barnett in court backs up what we are saying on the record here. It was Barnett himself who said 10 to 12 years is not enough for two . . . Didn't he also say, I just thought of this theory or something like that? Well, that is . . . Is that in the record? Well, something like that. What exactly did he say? Okay. What happened was there was an aborted first trial because the Detroit Climb Lab had made some mistakes. I understand the nature of . . . And then . . . right. About this particular item that I just made where he kind of indicated that this was a recent thought. Well, what he said was, I know this is kind of a stretch. There's nothing in there which says that I got this idea when I heard so-and-so speak. I don't remember that specific item. I do remember that he . . . we submitted the defendant's position that he had told the defendant that the state would be limited to the theory that they had at the first aborted trial. And he presented it as an issue and . . . but then admitted that, I know this is kind of a stretch. Well, shouldn't he tell the defendant that the theory is kind of a stretch? Well, not if he wants to make a name for himself attacking the Detroit Climb Lab. He stated his desire to show that they are a bunch of incompetent boobs. And I understand that that is a reasonable position to take if it has any tendency to help the defendant. It's also a reasonable position to take if you're looking for publicity. The job here, though, for this defendant is there was zero possibility of his winning the trial. Let's go back to what your client actually said. He filed pro se motions in the state court. And he explains in there why he withdrew his guilty plea. And he doesn't say anything about this erroneous advice from his trial counsel. It seems as . . . frankly, it seems as if this idea that somebody has planted in his head that this might be a good way to try to get a new trial came up sometime after Barnett said silly things in open court. All of which then . . . so then your client is in this awkward position about he's maintained a certain position up to now, and now he's got to switch his position. And I'm trying to figure out what's the basis for that. Okay. Well, first of all, the pleadings that Mr. Williams wrote by himself were certainly not written by an experienced attorney. They were written by an uneducated man. But he's the only one that knew why he withdrew his plea. Wouldn't you think he would have mentioned this if that was really the reason? Artfully or inartfully? I don't assume that an uneducated defendant is necessarily able to distinguish between which facts are important and which facts are less important. That's why we're supposed to have the effective assistance of counsel. And I say that any effective counsel would have said, you have no chance of winning this case. My theory that they have to stick . . . that the prosecution has to stick with the old theory, that's something I made up. That's what he should have said. But instead, he admitted his own conflict of interest. It's not on fighting for the family. Isn't that a derogation of everything that a defense lawyer is supposed to do? Let's go back again to what he told the state court. And I understand he's pro se. I get that. He told the state appellate court that he withdrew his pleas based on faulty advice about his sentencing exposure and his ability to undermine the credibility of the prosecution of witnesses. At least that's what Judge Leitman said in his opinion. Is that accurate as far as what he did tell the state court? That is some of what he did, what Judge Leitman told. Judge Leitman correctly described some of the things that the defendant said on paper. But nothing in what was presented in the motion for relief from judgment was contradicted in any way by the things that were said earlier by the defendant. I have two questions. One relates to my earlier question. I'm now on the page before, the page of the transcript immediately before he says this is a stretch. So it's the same hearing, right? Yes. He says, during this hearing, the prosecutor said something that concerns me. And now I believe it gives me a basis for a bill of particulars. That sounds like he came up with this theory during this hearing. Is there anything that suggests that he came up with this theory any earlier than that, like six months earlier when it's now being alleged that he relied on that theory? Do you see what I'm asking? Yes. The request for a bill of particulars is not the same thing as believing that the state is a stopped. That was a different position than the position that he said about a bill of particulars. They're not the same issue. I think what we're really focusing in here, Mr. Lawrence, is a question of timing. You're relying upon things that Barnett said approximately, if I remember right, six months after your client withdrew his guilty plea. So you want to infer from that that, geez, he must have told him these crazy things back at the time that your client decided to withdraw his guilty plea. That was the reason for requesting an evidentiary hearing in state court. But in the meantime, then, there is a trial. He gets convicted. He gets a much longer sentence. So now, obviously, he's really unhappy that he withdrew his guilty plea. He then files pleadings in state court, never mentioning anything that you are now arguing. Well, he had an appointed lawyer for the appeal, and I argued in our petition and in state court that that lawyer committed ineffective assistance of appellate counsel. As you can see, all of the issues raised were so terrible that I didn't even raise one of them in the federal court. But you can't show this appellate ineffective assistance deficient performance here unless he knew what your client now claims Barnett told him. It doesn't seem like there's anything in the record that shows that this appellate counsel even knew about your current claim. Well, it's right in the record. When the lawyer stands up there and says, I'm fighting for the family, this is not a long enough sentence for my client. He's totally abrogating all of his responsibilities as a defense lawyer, and it's right there in the record. Okay, so that's a slightly different argument than what I think is the basic argument here, which is that Barnett got ineffective assistance – in effect, incorrect advice in connection with withdrawing his plea. Well, he did a lot of things that were wrong, and they were all mostly in connection with having the defendant withdraw a plea that no reasonable attorney would have had him withdraw. The trial was completely unwinnable. Once the judge ruled, I believe the officers about the conditions of the statement. As it comes up to us here, we're kind of focused on this estoppel argument, whatever you want to call it. You're stuck with the number of shooters that's incorrect. If you broaden it to other ways in which the advice was bad, some of those issues come up to us differently, don't they? There's so many levels that I'm a little bit fuzzy. It's this argument that was apparently deemed to be precluded when it wasn't precluded at the state level. Edna works differently with respect to this issue and the other issues of whether there was ineffective assistance of counsel. Well, we requested an evidentiary hearing on all the issues. The judge said, I can't do it. It's already been decided, and I think all the parties agree, including the district court, that the state circuit judge was wrong. The defendant was wrong as to this issue. Some of those had been decided. Well, wrong as to evidentiary hearing, certainly. Okay, so if you're talking about evidentiary hearing, your time is up, and I just have this question. What exactly is the standard that, assuming we get past this statutory hurdle that Judge McKee assumes we're getting past, what is the standard that we apply to a decision by the court not to have a hearing? Okay, well, that's a real good question. That's why they pay me. And what I would state is that you have an error of law here in that the defendant has shown enough to entitle him to an evidentiary hearing. I feel that there has certainly been an abuse of discretion in that. So you're saying it's de novo or abuse of discretion? Well, it's de novo review of what the state court did under Robinson v. Howes, but it's abuse of discretion. I'm talking about the decision of the district court not to have a hearing. If you just say, I want a hearing, does the district court have to give a hearing, or does the district court have some discretion not to give a hearing once it gets over that statutory hurdle? The district court has discretion to have a hearing or not have a hearing, but that discretion is abused where we've presented sufficient cause to be concerned about the conduct of the attorney, his conflict of interest, and his ridiculously bad advice. If the district court says enough to be concerned is kind of a vague standard, if the district court says it's not enough for me to be concerned, we review that de novo or we review that under an abuse of discretion standard? Well, I'm afraid I don't really have the answer to that standing here. That's fair. Thank you. Thank you. Your Honors, and may it please the Court. Linus Banghart Lynn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting affirmance. I think the evidentiary hearing question, the standard is abuse of discretion. I agree. I don't think that there was any error of law made by the district court in this case. I think there's just a disagreement, but I'd rather counsel with the district court's decision. And the – excuse me just a second. I'm sorry, we're muttering. I didn't mean to interrupt. No, that's all right. I think that to say, first of all, he comes to the state court, doesn't file a motion for an evidentiary hearing, has no offer of proof, no affidavit, doesn't get an evidentiary hearing. The claim is denied on an erroneous procedural ruling coupled with a reasonable merits adjudication. The Michigan Court of Appeals denies leave in an ambiguous ruling, which is presumed to be a merits adjudication. The Michigan Supreme Court does the same. He comes to the federal court with no affidavit, no offer of proof, and requests an evidentiary hearing. At the oral argument on the hearing is the first time an offer of proof is made as to who might testify at the hearing, and it would be Gerard Williams. No offer of proof as to what Marvin Barnett might say or anybody else might say at the hearing. Couple that with the fact that the allegations in the petition are contradicted by the record, are not backed up as Judge Rogers, your questioning, teased out. It looks to me like this attorney is kind of off the wall, even I can tell, not having been a lawyer, been that kind of a lawyer. Come up with this stretch theory and say, you know, they're somehow bound by some theory that the facts contradict. It seems weird. Assuming it's kind of weird and off the wall, why should we assume that it wasn't weird and off the wall six months earlier? That's the issue. And if it was, then it looks like maybe he got ineffective assistance of counsel back then. I mean, if it's kind of, I don't want to say crazy, but if it's crazy, you know, crazy people do crazy things repeatedly. Sure, I understand the question. So now we've got some evidence that this kind of thing may have been what he was advised. Why shouldn't we have a hearing and find out? Several reasons, Your Honor. First is because, as your questioning pointed out, he actually said on the record this was the first time he was coming up with a theory. So that's evidence. That's kind of, he said something the prosecutor said concerns me. That's not, it doesn't say concerns me for the first time. I've got it right in front of me here. Sure, I understand. Okay, I think that I read the language as saying I'm coming up with it for the first time. Maybe we can disagree whether it says that. Second, we have the defendant's own words in his pro se standard four brief where he explains the reasons that he withdrew his plea and never mentions this. So that does contradict the idea that it was based on this crazy theory. Third of all, I think that as you described Barnett I think is off the wall, and I don't think I can disagree with that. But I don't think that we can disagree that he was a zealous attorney. And I don't think that if he believed eight months earlier that this crazy theory was actually true, there's no reason why he would sit on it for eight months. He would, why not file this motion? Why not brief the motion? Why not bring this crazy theory to the court's attention at the earliest opportunity? Why sit on it? Why say I'm not going to even bother briefing it, Your Honor? That doesn't fit. A crazy, zealous attorney can be crazy and zealous repeatedly. And if he was crazy and zealous eight months earlier and said, Mr. Williams, they can't proceed on this two-shooter theory. Don't worry. We got this. Withdraw your plea. Then he's going to crazily and zealously at the first motion say I want a bill of particulars and I want a motion to dismiss because they can't proceed on a two-shooter theory. And at that point the court could say denied, and then we could say, well, now we want the plea back. None of that happened. That's pretty persuasive to me, but I wonder whether if you had a hearing it would all pan out that way. I mean that's the concern I have. What exactly is the standard here? Well, I come back to what I started with, which is Mr. Lawrence has never told us what would happen at a hearing. I mean he said that at the oral argument, he said that Mr. Williams would testify consistent with the pleadings. But we don't have an affidavit from Mr. Williams. We don't have an affidavit or an offer of proof from Mr. Barnett. We don't have anything from – sometimes we get affidavits from family members saying, you know, my son or my brother talked to me and he said this was the reason he – Maybe we can maybe infer something from how much there is there from the fact that there's no affidavit from Barnett in the district court saying I said something like this six months earlier. Is that right? No, I'm not saying that we draw any inference from it, but what I'm saying is that when we review – You could have done it, though. When we review the district court's exercise of discretion, we say given the district court – given that the district court had almost nothing to support this, just the bare assertions in the pleadings, which are contradicted by the record, and then an offer of proof made at oral argument. Just one offer of proof. They're not contradicted in the record. They're just not supported where you would expect support. I think we can agree to disagree on that. I think that the statement in the standard forebrief where he says this is why I withdrew my plea, I think that is saying this reason and only this reason is why I withdrew my plea. And if you read it to say, well, there may have been other reasons why I withdrew my plea, it doesn't matter because on the prejudice prong of a Strickland claim, you have to show that but for counsel's inadequate – counsel's deficient performance, there's a reasonable probability he would have taken the plea. But if he's saying that there's an independent, separate reason he wanted to withdraw the plea, then there's other bad advice that he's not prejudiced by. If there are two independent reasons, then he's not prejudiced if one of them is bad. None of that addresses the fundamental question that Judge Rogers asked you a bit ago, which was what is the standard that we use to address this. Your argument was that he's precluded from having an evidentiary hearing. Now, he only is precluded from an evidentiary hearing if he failed to use diligent efforts to develop this theory in the state courts. And the state court didn't say that. The state court said he had addressed this theory, which is obviously incorrect. And it looks like he tried diligently to develop this theory and get an evidentiary hearing in the state courts, and he was denied for the reasons that we just mentioned. So that bar which determines the standard doesn't apply in this particular case. So then we go on, it seems to me, to the alternative holding of the district judge in this case that even if he wasn't barred from having a hearing, he still wouldn't have a hearing because he's exercising his discretion not to do so. So are we simply reviewing this for a pure abuse of discretion or are there cases that say you shall have a hearing and that that would then be an error of law, I assume, that would be reviewed de novo if you refuse to have a hearing? So to start with, the two bars, the statutory bar is a separate bar from the judge's. So they're separate arguments. And we maintain that E-2 is a statutory bar to an evidentiary hearing. The district judge didn't make a ruling on that question. And it is true that the trial court never said that he had not met the requirements for an evidentiary hearing, but also never said that he had. And so I believe that you can actually look at what he did in the trial court to see independently, regardless of what the trial court said, to see did he meet the requirements for an evidentiary hearing. Could you in your limited time skip to the next step of the argument? Sure. The next step of the argument is that the district court has discretion. If there's no E-2 bar, then the district court has the discretion. And there has to be some kind of significant showing by the petitioner to sort of warrant further investigation. Has he brought enough? And I don't have the exact wording. It is an abuse of discretion standard, but that discretion has to be exercised based on, you know, sort of what are the facts that the petitioner is bringing to the court. What is your best case for what the standard is, the standard that Judge McGee and I are asking for? I think my best case is Arradondo, which I've cited in the brief, which is to say that now Arradondo. Oh, Arradondo. Yeah, I don't have the citation in front of me, but it is in our brief. And that's a case where I think that I would be willing to stand up and argue that Judge Lightman would have abused his discretion to grant an evidentiary hearing. I understand that's an uphill battle, and I'm glad I don't have to make that argument. But that's how weak this showing was as far as needing one. Well, you would abuse your discretion if you made an error of law. Sure. So it's frankly hard to figure out whether Mr. Lawrence is claiming that there was an error of law in the exercise of the discretion. So I don't know the answer to that. If you fail to consider all the arguments, I assume that's an abuse of discretion. He says that he – but that isn't what happened here. He relied upon, in his opinion, the record wholly refuting the claim, and therefore it didn't matter what occurred during evidentiary hearing. It wouldn't make any difference. Right. So are we reviewing that decision, de novo, or abuse of discretion? No, it's still abuse of discretion, and that's the Arradondo decision, right, because that's what happened is where the defendant in that case, the claims were so wholly implausible and refuted by the record that this court held that there was no need to grant an evidentiary hearing because it didn't have anything to do with the witness's credibility. Would it be fair to say we have to look at whether we are firmly convinced that an error was made in the exercise of that discretion on the question of whether or not the record wholly refutes the purpose of the evidentiary hearing? I think that's correct. And in this case, that ruling was not based on credibility determinations, and it can't be because we can't look at that because that's something that would have been determined at a hearing, and it's not based on Judge Lightman being able to observe the demeanor of the witnesses and judge there whether they're lying or telling the truth or whether their recollection is correct. That's all stuff that would be determined at a hearing. This decision can be judged based on whether the claims themselves are so inherently implausible and refuted by the record, and I think that's language right out of Arradondo, that that itself means it was not an abuse of discretion to deny the evidentiary hearing. Mr. Lawrence's primary argument is that this Barnett guy said some really stupid things at a hearing six months after the plea had been withdrawn, so therefore that must have been why he was advising the defendant to withdraw his plea six months earlier. Your argument is, as interesting as that might be, one, there's no affidavit where the defendant has even said Barnett told him that six months earlier, and second of all, after he got convicted, he filed pleadings that never mention this. Is that really what it comes down to? That is most of what it comes down to. The main thing I would add in addition to that, and Judge Rogers and I were sort of disagreeing on this, is I think that if you read the colloquy at page ID 480 where Barnett is presenting this argument, I would read that and I would urge the court to read that as saying that this is something that has newly occurred to him. This is something what? That has newly occurred to Marvin Barnett. The exact words are, but during this hearing the prosecutor said something that concerns me, and now I believe it gives me a basis for a bill of particulars. That's it. Yes. There's not anything more. Right. And again, if this Court doesn't agree with me on that point, I think we have, I understand. We don't even need to get there in terms of figuring out what is meant by those two different references and consecutive pages. If there isn't any evidence to tie these things that he said six months later back to the reason for the withdrawal of the plea. Right. And especially keeping in mind. So what is the significance, if any, of the absence of an affidavit from, in this case, from Mr. Williams? I've always been curious about is it enough for a lawyer to come in and say, I see three options. The lawyer can come in and say, well, Barnett told him that six months earlier, without any support. Or the lawyer can come in and say, well, my client told me that this is what the lawyer said six months earlier. Or the lawyer can come in and say, this is our argument, and it's based upon this client's affidavit. In this milieu, can we proceed on any of those three ways, or do you have to have an affidavit? I think, well, and again, there are two courts, right? And so I think your question can be applied to both the state court proceeding and the federal court proceeding. An affidavit can be evidence. And so I believe that if you had an affidavit, you would at least be able to say, especially if an affidavit had been filed in state court, you could say, well, we have record evidence. Maybe it's weak at record evidence, but we have some record evidence that Barnett actually said this at the time. Here we have no record evidence that Barnett said this at the time. We have only the unsupported, bare allegations of counsel and the pleadings. And so I think that's really the difference. Now, when we do have an affidavit from a petitioner, we of course always argue, well, it's just a self-serving affidavit and don't give it much credibility. But at least it is something. And here in the state court record, we have nothing. You cite Arradondo, which you quote as saying that the standard is whether it's highly implausible. Is that what you're saying the standard is? I mean, not necessarily. Do you give him a hearing unless it's highly implausible that it will turn up anything relevant? I think it is. That's your case now. Right. No, I understand. I think that where it is highly implausible or refuted by the record, then it is within the judge's discretion to deny a hearing. Now, I don't think that it is necessary. I think that's sufficient rather than necessary language. But he cites a bunch of cases. I can't pronounce it. Shrero in the United States Supreme Court and Sawyer in our court, which indicate that he's generally entitled to, once he gets over the statutory hurdle that we've talked about, to an evidentiary hearing if he alleges sufficient grounds for release and relevant facts are in dispute. So it's sort of a facts are in dispute standard. It's just sort of competing lines of cases, or can that all be reconciled? I think it can be reconciled by saying that he hasn't made that sufficient showing referred to in those cases. He hasn't adequately shown a factual dispute. Exactly, because if this is an adequate showing of factual dispute, I realize this might sound like hyperbole, but it's hard to imagine a petitioner who wouldn't get an evidentiary hearing once they're past the E-2 bar. And, again, we maintain the E-2 bar holds. I understand that might not get a lot of traction, but I don't want to seem to concede that. But, again, once you're past the E-2 bar, if Mr. Williams gets a hearing, I don't know who doesn't. Thank you. Thank you, Your Honor. Okay. Well, I would first like to speak about the fact that there is no Michigan court rule, statute, or decision that says that an offer of proof must be made by affidavit. No court has ruled that way, not Judge Kenney, not Court of Appeals, not Michigan Supreme Court, not Judge Lightman. So that's really a red herring. Did you make an offer of proof before Judge Lightman? I made an offer of proof in the pleadings in state court and in federal court that the record would show that Mr. Barnett was operating with an intolerable conflict of interest and that his advice was, on its face, incompetent and that he had told certain things to the defendant. And I admit they're not supported by affidavit, but there's no state court rule that requires that. It was rejected because of the mistaken belief of the circuit judge that the issue had been raised before. And the real question here is whether the issue's been waived and nobody has ruled that it's been waived and it hasn't been waived. It is not highly implausible. I just want to make sure I understand your argument. Who's arguing something is waived here? I'm missing that. Well, if you're saying that we've done something procedurally that makes it impossible to proceed with the issue, that's the respondent's position, and I'm claiming that nothing has been waived here. We went to the court. We provided offer of proof. You can spend your rebuttal time on that if you want, but I don't think anybody's making that claim. Very good. Did the defendant, the petitioner, did he know that there was such a legal principle as conflict of interest? Did he even know that? And if he didn't know that, how could he reasonably be expected to raise it? Concerning the filings of motions by the attorney, it's true that Mr. Barnett did not file any sort of motion regarding restricting the prosecution. He also didn't file any written motion to withdraw the plea. He just went ahead and did it. You seem to be, subtly or not so subtly, changing your whole focus here from giving incorrect advice about the one or two-shooter theory as a reason why he should withdraw his plea to a conflict of interest. So is it both? Absolutely it's both. This attorney had no business representing somebody when he is declaring to the court, you're not giving my client enough time. It's not enough. And no, I don't believe that that can be considered constitutionally adequate representation. I tried to reach Mr. Barnett. Mr. Barnett wouldn't respond to it. I submit that when there is a conflict of interest by the attorney, anything that the attorney does is improper and is automatically ineffective assistance of counsel. I just want to raise one other thing cited in the rebuttal brief, Williams v. Taylor, 2000. If, for example, a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an unreasonable determination of the facts. Which case is that? That's Terry Williams v. Taylor, 529 U.S. 362. And they cite to Taylor v. Mattox a case from the Ninth Circuit. And I submit that the findings are unreasonable. What do you do with Arradondo which says, yeah, but not if it's highly implausible? It's not highly implausible. There is not one word in the record that contradicts any of our claims, and he hasn't mentioned one. I want to go back to this issue of your claiming he gave him improper advice six months earlier. That's why he withdrew his plea. And you're claiming conflict of interest. I don't think that your question of conflict of interest is included in the certificate of appealability here. The conflict of interest is part of the issue of ineffective assistance of counsel. An attorney who has a conflict of interest is automatically acting ineffectively. But you don't have a certificate of appealability on that. I have a certificate of appealability on the claim of ineffective counsel. Conflict of interest proves ineffective counsel. But the certificate of appealability, I'll have to go back and look, but I thought it addressed the specific ineffective assistance claim that you're making about this improper advice. It's not this global claim that you can then raise anything you want about ineffective assistance any time. Well, we'll look at it. Yeah, I'm sorry that I am not prepared to answer that, all that I can say. That's fine. We'll look it up. Thank you. Thank you, Your Honor.